UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DONALD YOUNG,                        )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        No.:  3:12-CV-272
                                     )              (VARLAN/SHIRLEY)
CAROLYN W. COLVIN,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

## MEMORANDUM AND ORDER

Before the Court is the Plaintiff's Motion for Judgment on the Administrative

Record and Memorandum in Support [Docs. 12 and 13] and Defendant's Motion for

Summary Judgment and Memorandum in Support [Docs. 14 and 15].  Both parties have

also filed reply briefs [Docs. 16 and 17], which the Court has also considered.  Plaintiff

Donald Young ("Plaintiff") seeks judicial review of the decision by the Administrative

Law Judge ("ALJ") to deny his benefits, which was the final decision of Defendant

Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On October 8, 2008, the Plaintiff filed an application for a period of disability,

disability insurance benefits, and/or supplemental security income, claiming a period of

disability which began on February 5, 2001.  [Tr. 18, 121-23].  After his application was

denied initially and also denied upon reconsideration, Plaintiff requested a hearing.  [Tr.

18-21, 63-68].  On January 13, 2010, a hearing was held before an ALJ to review the

Plaintiff's claim.  [Tr. 26-61].  On March 25, 2010, the ALJ found that the Plaintiff was

not disabled. [Tr. 21]. On April 10, 2012, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3].

Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. Through December 31, 2006, the claimant engaged in substantial gainful activity during the following periods:   2003 through 2008 (20 C.F.R. 404.1520(b) and 404.1571 *et seq*.).

3. Through December 31, 2006, there was no continuous 12-month period which the claimant did not engage in substantial gainful activity.

4. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 5, 2001, the alleged onset date, through December 31, 2006, the date last insured (20 C.F.R. 404.1520(b)).

[Tr. 18-21].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act.   42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.   An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability.   See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

3

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §
404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of
proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must
prove that there is work available in the national economy that the claimant could
perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen
v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is
disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the
ALJ applied the correct legal standards and whether the findings of the ALJ are supported
by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir.
2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the
correct legal standards and his findings are supported by substantial evidence in the
record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec.,
375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more
than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of
Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v.
Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229
(1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is

harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. <u>See</u> <u>id.</u> at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. <u>Boyes v. Sec'y of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff argues, generally, that the ALJ erred by determining that he continued to engage in substantial gainful activity ("SGA") from his alleged onset date through his date last insured. [Doc. 13 at 7]. Specifically, the Plaintiff alleges that the ALJ erred by: (1) concluding that he engaged in SGA without following the correct procedures under 20 C.F.R. § 404.1575(a)(2); (2) finding that he engaged in SGA according to the first test of 20 C.F.R. § 404.1575(a)(2)(i) ("Test One"); (3) incorrectly attributing to the Plaintiff income earned by others; (4) failing to apply the second test under 20 C.F.R. § 404.1575(a)(2)(ii) ("Test Two") and the third test under 20 C.F.R. § 404.1575(a)(2)(iii) ("Test Three"); and (5) concluding that the Plaintiff rendered significant services to the production or management of the farm. [<u>Id.</u> at 7-13]. The Plaintiff further seeks to have his tax records amended to change a $1,250 annual payment from farm sales to rental income. [<u>Id.</u> at 13-14].

The Commissioner responds that there is substantial evidence to support the ALJ's decision that the Plaintiff engaged in SGA from his alleged onset date through his date last insured. [Doc. 15 at 3]. In addition, the Commissioner contends that the Plaintiff

rendered significant services to the operation of the farm by materially participating in the agricultural business of the farm. [Id. at 4-6].  Further, the Commissioner argues that a showing of substantial income is unnecessary for a self-employed claimant because the adjudicator evaluates work by a self-employed individual based on the value of the individual's services to the business, and SGA can include non-profit making activity. [Id. at 6-7].  Finally, the Commissioner argues that the Plaintiff also met Test Two with respect to SGA because he failed to show that he did not participate in the management of the farm similar to unimpaired individuals in the same or similar business.  [Id. at 7-8].

## V.    ANALYSIS

The Court will address each of the Plaintiff's arguments in turn.

### A.    Procedures under 20 C.F.R. § 404.1575(a)(2)

The Plaintiff argues that the ALJ did not follow the correct procedures under 20 C.F.R. § 404.1575(a)(2) to determine whether the Plaintiff engaged in SGA.  [Doc. 13 at 7].  He contends that the ALJ should have expressly considered the general rules for evaluating work activity by a self-employed claimant.  [Id.].  In addition, the Plaintiff argues that the ALJ failed to consider his initial farming activity as an unsuccessful work attempt.  [Id. at 8].

The Commissioner responds by asserting that the ALJ was correct to end the sequential evaluation at the first step.  [Doc. 15 at 4].  Further, the Commissioner asserts that the ALJ followed the regulations promulgated for evaluating the work of self-employed individuals.  [Id.].  The Commissioner did not respond to Plaintiff's contention

that the ALJ failed to consider the Plaintiff's initial farming activity as an unsuccessful work attempt.

The procedures for evaluating SGA under 20 C.F.R. § 404.1575 are separated into general rules and specific tests. The Plaintiff's first allegation of error concerns the general rules for evaluating work activity for self-employed claimants. See 20 C.F.R. § 404.1575(a)(2). The first general rule is that the adjudicator will consider the self-employed claimant's activities and their value to the claimant's business to decide if he or she has engaged in SGA. Id. Next, the adjudicator "will not consider [the claimant's] income alone because the amount of income [the claimant] receives could depend on a number of different factors, such as capital investment and profit-sharing agreements." Id. Generally, work that the claimant was forced to stop or reduce below the level of SGA after six months or less will be considered an unsuccessful work attempt. Id. Finally, the adjudicator will evaluate work activity based on the claimant's value to the business regardless of whether the claimant receives immediate income for the services. Id.

In the present case, the ALJ found that the Plaintiff had earnings which constituted farming income for each year from 2003 through 2008. [Tr. 20]. The ALJ explicitly referenced the farming sales and losses by the Plaintiff for each of these years. [Id.]. Moreover, the ALJ stated that the "claimant 'materially participated' in business as a 'farmer' as stated on his income tax returns." [Id.]. Thus, the ALJ considered the Plaintiff's income but did not consider income alone. Further, the ALJ's finding that the

8

Plaintiff materially participated in the business demonstrates that the ALJ contemplated the Plaintiff's value to the business. Accordingly, the Court finds that the ALJ properly considered the Plaintiff's work activity and income prior to applying Test One. See 20 C.F.R. § 404.1575(a)(2).

While the Commissioner did not respond to the Plaintiff's allegation that the ALJ failed to consider the first year of the Plaintiff's farming activity as an unsuccessful work attempt, the Court finds that this argument is without merit. A work attempt will not count as SGA if the claimant, after working for a period of six months or less, is forced by an impairment to cease working or to reduce the amount of work activity below the level of SGA. See 20 C.F.R. § 404.1575(d)(1). However, if the work attempt lasted longer than six months, "[w]e will not consider work you performed at the substantial gainful activity level for more than 6 months to be an unsuccessful work attempt regardless of why it ended or was reduced below the [SGA] earnings level." 20 C.F.R. § 404.1575(d)(5).

Here, the Plaintiff stated that he personally operated the farm for "about a year after I retired." [Tr. 54]. While the Plaintiff stated that he quit farming because he "couldn't handle it no [sic] more," he also stated that "there's no money in farming." [Id.]. Since the ALJ determined that there "was no continuous 12-month period during which the claimant did not engage in substantial gainful activity," [Tr. 21], and the Plaintiff's work attempt lasted longer than six months, there is substantial evidence in the record that the Plaintiff did not instigate an unsuccessful work attempt.

### B. Significant Gainful Activity under Test One

Next, the Plaintiff contends that the ALJ incorrectly determined that he engaged in SGA pursuant to Test One. First, he argues that his activities were not significant because "he rented out his farm during this period, and the tenant farmer made all the significant decisions concerning farming operations." [Doc. 13 at 9]. In addition, the Plaintiff asserts that even if he provided significant services, he did not receive substantial income for those services. [Id. at 9-10]. The Plaintiff notes that he "incurred a loss on his farm in each of the years 2003-2008," and his income was "a little more than 10% of the poverty level." [Id.].

The Commissioner responds by claiming that the Plaintiff provided significant services to the farming operation. [Doc. 15 at 5]. Specifically, the Commissioner notes that the "Plaintiff had extensive farm-related expenses for cars and trucks, feed, repairs and maintenance, seeds and plants, supplies, veterinary, breeding, and medicine, utilities, and insurance each year from 2003 to 2008, totaling between $8,000 and $15,000 per year." [Id. at 6]. Further, the Commissioner argues that the Plaintiff's taxable income is not determinative because "substantial gainful activity can include non-profit making activity." [Id.]. The Commissioner states that, for self-employed individuals, it is "necessary to consider the economic value of the individual's services, regardless of whether an immediate income results from those services." [Id.].

Under the Social Security Act and its implementing regulations, a self-employed individual is evaluated for SGA under three tests. See 20 C.F.R. § 404.1575(a)(2)(i)-(iii).

If the ALJ determines that the claimant has not engaged in SGA under Test One, he will then consider Test Two and Test Three. <u>Id.</u> Under Test One, an individual has engaged in SGA if he (1) renders services that are significant to the operation of the business and (2) receives a substantial income from the business. <u>See</u> 20 C.F.R. § 404.1575(a)(2)(i). The Court will first analyze whether the Plaintiff rendered significant services and then consider whether he received a substantial income.

### 1. Significant Services

If the claimant is not a farm landlord and operates the business entirely by himself, any services rendered are significant to the business. <u>See</u> 20 C.F.R. § 404.1575(b)(1). If the claimant is a farm landlord, services are significant if the claimant materially participates in the production or management of the things raised on the rented farm. <u>See</u> 20 C.F.R. § 404.1575(b)(2). To determine material participation, the adjudicator will evaluate whether the claimant periodically advised or consulted with the other person and whether the claimant periodically inspected the production activities on the land. <u>See</u> 20 C.F.R. § 404.1082(c)(3)(i). If these activities are present, this will present strong evidence that the claimant is materially participating in the business. <u>Id.</u> In addition, if the claimant furnishes a large portion of the machinery, tools, and livestock used in the production of the commodities, advances monies, or assumes financial responsibility for a substantial part of the expense involved in the production of the commodities, this will establish material participation. <u>See</u> 20 C.F.R. § 404.1082(c)(2)(ii).

11

In the present case, the Plaintiff, while not physically working the farm, maintained activities consistent with managing the farm's business operations. The Plaintiff deducted expenses on his income tax returns for feed, seed, fertilizers, lime, farm equipment repairs, supplies, storage, maintenance, utilities, and veterinary, breeding, and medicine costs. [Tr. 157-227]. These deductions strongly suggest an active participation in the management of the farm. Furthermore, the farm tenant's affidavit stated that he had an oral agreement with the Plaintiff "to fertilize, lime, and care for the hay fields; to take up hay at the appropriate times; and [to retain] the profits as pay for his labor." [Tr. 309]. There is no evidence in the record that the farm tenant purchased any farming supplies or used his own equipment. However, given the Plaintiff's tax deductions for equipment repair and maintenance, there is evidence in the record that the Plaintiff furnished the machinery and tools used on the farm. Moreover, given the Plaintiff's tax deductions for seed, lime, and fertilizer, there is evidence in the record that the Plaintiff advanced monies for a substantial part of the expense in the production of the commodities on the farm. Accordingly, the Court finds that there is substantial evidence in the record demonstrating that the Plaintiff materially participated in the production of commodities on the farm, and therefore, the Plaintiff provided significant services to the business.

### 2.    Substantial Income

Once the ALJ determines that the claimant provided significant services to the business, he must then determine if the claimant received substantial income. The first

12

step in establishing substantial income is determining the claimant's countable income. The ALJ determines countable income by deducting normal business expenses from gross income to determine net income. 20 C.F.R. § 404.1575(c)(1). Once net income is determined, the ALJ subtracts any benefit from unpaid help, impairment related work expenses, unincurred business expenses paid by another, and soil bank payments. Id. The remaining total is the claimant's countable income. Countable income is considered substantial if it: (1) averages more than the amounts described in 20 C.F.R. § 404.1574(b)(2); or (2) it averages less than these amounts but it is either comparable to what it was before the onset of the claimant's impairment or it is comparable to that of unimpaired self-employed persons in the claimant's community who are in the same or similar business. 20 C.F.R. § 404.1575(c)(2)(i)-(ii).

Here, the Plaintiff is claiming a net loss from farming for each year following his alleged onset date. For example, the Plaintiff's tax return in 2004 shows $1,250 in sales and $11,438 in expenses, resulting in a net loss of $10,188. However, the ALJ afforded the Plaintiff's reported income little weight, stating that "[w]hether or not a substantial profit was realized is immaterial to the determination of substantial gainful activity in a self-employed situation where the individual has complete control over the reporting of income, expenses and deductions." [Tr. 21]. The Plaintiff responds by claiming that his losses are being covered by funds withdrawn from his 401K plan [Doc. 16 at 9], although there is no evidence in the record to support this contention.

13

While the Plaintiff bears the burden of establishing that he was not engaging in SGA, see Boyes, 46 F.3d at 512, the ALJ must base his findings on the correct legal standards and the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson, 378 F.3d at 544. The ALJ's determination that self-reported income is immaterial to the determination of SGA is not supported by any explicit language in the regulations. For self-employed claimants, income is not a dispositive factor, but there is no regulatory language which would suggest that self-reported income is "immaterial." Instead, self-reported income is analyzed with closer scrutiny because the amount of income reported "is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits." SSR 83-34, 1983 WL 31256, at *1 (Jan. 1, 1983). Furthermore, a claimant's services may "help build up capital assets during a period of development where no profits are evident, or they may reduce losses during temporary periods of poor business conditions." Id. Here, there is no direct evidence in the record which would allow the ALJ to determine if these factors affected the Plaintiff's stated income.

Further, the Court finds that the ALJ did not follow the correct procedures for analyzing substantial income. First, The ALJ failed to consider the earnings guidelines contained in 20 C.F.R. § 404.1574(b)(2). See Peterson v. Charter, 72 F.3d 675, 676 (8th Cir. 1995) (holding that an ALJ's determination of SGA by self-employed farm landlord should have included an explicit determination of substantial income). During the

14

relevant period, the Plaintiff's farm did not have any net income. See Weiland v. Barnhart, 239 F. Supp. 2d 875, 876 (N.D. Iowa 2002) (holding that a claimant did not meet the substantial income test for SGA because his livestock and hatchery business operated at a net loss for the years in question). Since the Plaintiff's earnings were obviously below the levels specified in 20 C.F.R. § 404.1574(b)(2), the ALJ should have considered (1) whether the Plaintiff's income was comparable to what it was before he became seriously impaired; or (2) whether the Plaintiff's income was comparable to that of unimpaired self-employed persons in his community who are in the same or similar business as their means of livelihood. See 20 C.F.R. § 404.1575(c)(2)(ii).

Moreover, the ALJ failed to cite any evidence in the record which would demonstrate that the Plaintiff's earnings reports should not be taken at face value. See Brown v. Com'r of Soc. Sec., No. 00-3067, 2000 WL 1800580, at *2 (6th Cir. Nov. 30, 2000) (holding that a self-employed claimant's lack of Social Security earnings did not foreclose a finding of SGA when there was evidence in the record that the claimant was not reporting self-employment income). In the present case, the ALJ did not specify why the Plaintiff's self-reported earnings reports were unreliable. Although the Plaintiff had complete control over the reporting of income, expenses, and deductions, the ALJ failed to make any determinations of credibility. If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so. See Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). Since there is no language in the regulations that authorizes an ALJ to entirely discount a self-employed claimant's self-reported earnings, and there

15

is no evidence in the record to question the Plaintiff's credibility, there is no basis for the ALJ to find that the Plaintiff received substantial income from his business.

Accordingly, there is not substantial evidence in the record to support the ALJ's determination that the Plaintiff met the second part of Test One, i.e., that he received a substantial income from the business so as to conclude that the Plaintiff engaged in SGA under Test One.

### C. Incorrectly Attributing Income to Plaintiff

The Plaintiff next alleges that the $1,250 annual payments by the farm tenant should not count as income earned by the Plaintiff. [Doc. 13 at 10]. Generally, the "[e]valuation of a self-employed person's work activity for SGA purposes is concerned only with that income which represents the person's own productivity." SSR 83-34, 1983 WL 31256, at *4 (Jan. 1, 1983); see also Young v. Barnhart, 415 F. Supp. 2d 823, 827 (M.D. Tenn. 2006) (remanding the denial of disability benefits for a blind claimant because it was ambiguous whether commissions from vending machines were earned income derived from the claimant's own productivity). When a claimant owns land and rents it to another person for the purpose of farming, any income derived from the rental is included in figuring net earnings from self-employment if: (1) the income results from an arrangement between the landlord and tenant which provides for the tenant to produce agricultural or horticultural commodities on the landlord's land and for the landlord to materially participate in such production; and (2) the landlord actually materially participates. 20 C.F.R. § 404.1082(c).

16

Here, the Plaintiff is a farm landlord, accepting rent payments in exchange for allowing the tenant to grow hay and to raise cattle on the property. The Plaintiff claims that these rental payments were "derived from the tenant farmer's production from the land he leased from the Plaintiff." [Doc. 13 at 10]. There is, however, no evidence in the record that the rental payments were tied to the tenant's farming activities. The Plaintiff's productivity concerning the farm did not relate to the farming activities of the tenant, but instead, related to the Plaintiff's management of the farm. Since the ALJ properly concluded that there was substantial evidence in the record to show that the Plaintiff materially participated in production of commodities and the management of the farm, any rental income received by the Plaintiff counts towards his net income. Accordingly, the $1,250 annual payments to the Plaintiff constituted earned income.

### D.    Test Two and Test Three

Next, the Plaintiff argues that the ALJ should have analyzed Test One and then proceeded to Test Two and Test Three. If the claimant does not meet the requirements of Test One for SGA, the regulations specify that the ALJ should analyze the claim under Test Two and Test Three. See 20 C.F.R. § 404.1575(a)(2). Under Test Two, the claimant has engaged in SGA if his work activity "is comparable to that of unimpaired individuals in [the claimant's] community who are in the same or similar business as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii). For Test Three, the claimant has engaged in SGA if his work activity is not comparable to unimpaired individuals but still is "clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its

17

value to the business, or when compared to the salary that an owner would pay to an employee to do the work [the claimant is] doing." 20 C.F.R. § 404.1574(a)(2)(iii).

The Commissioner responds by arguing that the ALJ considered Test Two when he determined that the Plaintiff "operated a farm, buying and selling farm products, and took the necessary business deductions, similar to other farmers engaging in the same occupation." [Tr. 21]. However, even if the ALJ was applying Test Two in this finding, he did not provide sufficient reasons for finding SGA under this test. For a finding of SGA under Test Two, it is necessary to show that the disabled person is performing at a level comparable to that of unimpaired persons "in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities." 20 C.F.R. § 404.1575(a)(2)(ii). An important part of the comparison between the claimant and an unimpaired person is the selection of a control group of unimpaired individuals. This control group should have self-employment similar to the claimant and maintain an adequate living in a similar community. SSR 83-34, 1983 WL 31256, at * 9 (Jan. 1, 1983). The development of this comparison must be specific, and "[e]ach work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required." Id. Finally, "[e]vidence of the impaired individual's activities accompanied by a statement that the work is comparable to the work of impaired persons is insufficient for a sound decision." Id.

The ALJ made only a general comparison between the Plaintiff and unimpaired individuals in the community. The ALJ did not articulate any specific reasons that would substantiate his comparison of the Plaintiff to unimpaired individuals. In following the regulations, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. Fleisher v. Astrue, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); see also Wilson, 378 F.3d at 544. Since the ALJ failed to specifically compare the Plaintiff's work activities to individuals in the Plaintiff's community who maintained similar self-employment, the Court is unable to engage in meaningful review of whether the ALJ applied Test Two for SGA.

### E.    Significant Services

The Plaintiff's next allegation of error repeats the contention that he did not render services that were significant to the business. The Plaintiff makes the analogy that a paraplegic could pay for farming supplies yet not be engaged in the business of farming. This analogy, however, is not relevant to the determination of disability for Social Security purposes. If the claimant engaged in SGA, "we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." 20 C.F.R. § 404.1520(b). "[A]n individual who does [SGA] despite an impairment or impairments that otherwise might be considered disabling is not disabled for purposes of … social security benefits based on disability during any period in which such work is performed." Bell v. Comm'r of Soc. Sec., 103 F.3d 244, 247 (6th Cir. 1996) (quoting Jones v. Shalala, 21 F.3d 191, 193 (7th Cir. 1994)). Thus, the first step of

the five-step sequential evaluation process concerns the claimant's ability to engage in SGA and not the severity of the claimant's alleged impairment. Accordingly, the Court finds the Plaintiff's argument is not well-taken.

### F.     Amending the Technical Record

Finally, the Plaintiff requests that the Court give him leave to amend his tax returns, changing the $1,250 annual payment attributed as farm sales to rental income. The Court finds that amending the Plaintiff's tax returns would not affect the resolution of this matter. While reported income from self-employed individuals is not a determinative factor, 20 C.F.R. § 404.1575(a)(2), the ALJ erred in this case by determining that the Plaintiff engaged in SGA without evaluating whether the Plaintiff received substantial income. Here, the Plaintiff's income, whether characterized as farm sales or rental income, is well below the presumptive guidelines provided by 20 C.F.R. 404.1574(b)(2). Since altering the Plaintiff's tax returns would not affect the analysis of substantial income, the Court finds no reason to grant the Plaintiff's request.

## VI.    CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff's Motion for Judgment on the Administrative Record **[Doc. 12]** is **GRANTED** to the extent that it requests that this case be **REMANDED** to the Commissioner for further proceedings consistent with this decision, and to this extent, the Commissioner's Motion for Summary Judgment **[Doc. 14]** be **DENIED**. On remand, the ALJ should analyze whether the Plaintiff received substantial income under Test One. If the ALJ is unable to find that the Plaintiff

received substantial income, the ALJ should then proceed to analyze whether the Plaintiff engaged in SGA under Test Two and Test Three.

ENTER:

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED AS A JUDGMENT

s/ Debra C. Poplin
CLERK OF COURT